25CA0086 Marriage of Chorba 07-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0086
La Plata County District Court No. 23DR30037
Honorable Kim S. Shropshire, Judge

In re the Marriage of

Melany Maddux Adler,

Appellant and Cross-Appellee,

and

James Alan Chorba,

Appellee and Cross-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

The Law Firm of Anderson & Baker, LLC, Curtis Kofoed, Durango, Colorado, for Appellant and Cross-Appellee

The Law Firm of Lisa Ward, LLC, Lisa Ward, Donald Lawrence, Jr., Durango, Colorado, for Appellee and Cross-Appellant

¶ 1     In this dissolution of marriage proceeding, Melany Maddux Adler (wife) and James Alan Chorba (husband) both appeal the trial court's permanent orders and its order on their motions to reconsider.  We affirm.

## I.     Background

¶ 2     After meeting in Austin, Texas, the parties were married in May 2018, and wife filed a petition for dissolution of marriage in Colorado in July 2023.  At the time of the permanent orders hearing, husband was sixty-nine years old and wife was sixty-eight years old.

¶ 3     Shortly after they were married, husband purchased a lot on Hermosa Meadows Road, and, with the help of local professionals, he and wife designed and built a house on the lot (the Hermosa property).  Husband ended up serving as the general contractor and completed a significant amount of work on the house.  Wife purchased fixtures and other items for the home.

¶ 4     Before and during the marriage, husband was the account holder for a self-directed IRA (SDIRA).  He bought and sold property through the SDIRA.  The SDIRA had a cash balance, but it also held

real property, including three apartment buildings on Hearthside Drive in Austin (the Hearthside properties).

¶ 5 Although husband used the SDIRA to buy and sell property, during the six years of the marriage, husband hadn't made any cash withdrawals until he withdrew a total of $100,000 in February and April 2024 — a few months before the permanent orders hearing. Husband also sold the Hearthside properties immediately before the hearing, and the sales closed the day of the hearing.

¶ 6 After the hearing, the court made the following findings in its permanent orders:

- it valued the marital estate at $2,641,382.74;
- it found that husband didn't establish by clear and convincing evidence that the Hermosa property was his separate property;
- it found that the Hermosa property was marital property because it was a "gift to the marriage";
- after finding that each party would incur significant debt if individually awarded the Hermosa property, the court ordered its sale, with 65.6% of proceeds going to wife and 34.4% of proceeds going to husband;

2

- it valued the SDIRA as it would any other IRA, as an aggregate;

- it found that the appropriate time to value the SDIRA was prior to the sale of the Hearthside properties; and

- it determined that the SDIRA's date of marriage value was $1,363,708.20; its value on the date of permanent orders was $2,215,226.94; and its marital value was $851,518.74.

¶ 7 Both parties moved for relief. Husband filed a C.R.C.P. 59 motion, asking the court, in relevant part, to (1) amend the date of marriage value of the SDIRA to reflect the increased 2018 assessed value of the Hearthside properties instead of using the properties' 2017 value; (2) find that the Hermosa property was his separate property; and (3) reconsider the ordered sale of the Hermosa property. Wife moved for relief under C.R.C.P. 59 and 60. She asked the court to revise the SDIRA's date of decree valuation to reflect the individual value of the Hearthside properties — instead of using the assets' aggregate value. She also asked the court to include husband's combined $100,000 distributions in the SDIRA valuation.

¶ 8 The court denied the parties' requests in their respective motions to reconsider, except the court (1) granted wife's request to value the SDIRA prior to the withdrawal of the combined $100,000 distributions that husband had taken and (2) granted husband's request to reconsider the SDIRA's value on the date of marriage to reflect its value in May 2018. Based on the two adjustments, the SDIRA's date of marriage value was $1,735,256; its date of decree value was $2,314,810.93; and its marital value was $579,554.93.

## II. Analysis

¶ 9 Wife and husband both appeal. Wife contends that the court incorrectly valued the SDIRA at the date of decree and used an inconsistent method to value the SDIRA, which resulted in an inequitable property division. Husband contends that the court abused its discretion by adding $100,000 to the SDIRA's valuation for funds he withdrew during the dissolution proceedings and that it erred by determining that the Hermosa property was marital property. We consider wife's contentions first and then turn to husband's.

### A. Method of Valuing the SDIRA

¶ 10    Wife contends that the court erred by calculating the marital value of the SDIRA based on the aggregate value of its assets at the date of decree rather than calculating the value of the individual assets within it. She also asserts that, because the 2024 assessed value of the Hearthside properties was available on the date of decree, the court should have used that assessment to value the Hearthside properties instead of the 2023 assessment.

¶ 11    We disagree and discern no error with the way the court aggregately valued the assets in the SDIRA to calculate the SDIRA's marital value. Because we decline to disturb the court's aggregate valuation method, we need not consider wife's arguments that the SDIRA's aggregate valuation resulted in an inequitable distribution of marital property or that court should have used the 2024 county assessor's valuations of the individual Hearthside properties to value the SDIRA on the date of decree.

### 1. Applicable Law and Standard of Review

¶ 12    The court must value marital property as of the date of the decree of dissolution or as of the date of the hearing if the hearing occurs before the date of the decree. § 14-10-113(5), C.R.S. 2025;

5

*In re Marriage of Cardona*, 2014 CO 3, ¶ 12. When valuing property, the court may adopt the valuation of one party over the other's or make its own valuation. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 41. The valuation of property is a factual determination within the discretion of the trial court and won't be disturbed "if it is reasonable in light of the evidence as a whole." *In re Marriage of Krejci*, 2013 COA 6, ¶ 23.

### 2. Additional Facts

¶ 13 At the permanent orders hearing, wife presented evidence that, at the time of the dissolution proceeding, two of the Hearthside buildings were appraised at $740,000, and one was appraised for $685,000. Husband presented evidence that the buildings were valued at $557,000 each — the amount at which they were sold. He also provided reports from Forge Trust, the SDIRA's custodian, showing the aggregate value of the SDIRA in 2018 and 2024. Husband testified that the Forge Trust reports were what he annually reported to the IRS.

¶ 14 The court found that the parties' evidence individually valuing the Hearthside properties was "overly optimistic" and, depending on who was proffering it, leaned toward a "positive outcome" for either

6

husband or wife. Because the Forge Trust reports were required by IRS regulations to substantiate the SDIRA's entire value for tax and compliance purposes, the court found that valuation credible and used the reports to calculate the marital value of the SDIRA.

### 3. Analysis

¶ 15 Wife contends the court's valuation methodology was arbitrary, unreasonable, and unsupported by the evidence because the SDIRA's corrected date of marriage value was based on the itemized valuation of the individual Hearthside properties, while the date of divorce valuation was based on the SDIRA's aggregate value.

¶ 16 Wife's argument is misplaced. The court didn't undertake an itemized valuation of the individual Hearthside properties to value the SDIRA on the date of marriage; instead, it relied on the SDIRA's account balance reported by Forge Trust (then IRA Services Trust Company) following a valuation adjustment. The court recognized that its prior date of marriage valuation — based on a Forge Trust statement listing the 2017 assessed value of the Hearthside properties — didn't reflect the properties' 2018 assessed value, which increased the SDIRA's aggregate value by several hundred thousand dollars. Husband testified that even though the

adjustment occurred in November, it was effective January 1, 2018, and represented the value of the SDIRA in May 2018.[1]

¶ 17 The court has significant discretion to value property, and based on our review of the record, it didn't abuse its discretion by using the Forge Trust report's corrected 2018 value to determine the value of the SDIRA's property on the date of marriage. *In re Marriage of Plesich*, 881 P.2d 379, 381 (Colo. App. 1994) ("[A] trial court has discretion to arrive at its own determination of value, and its valuation will be upheld if it is reasonable in light of the evidence as a whole.").

¶ 18 Contrary to wife's assertion, the court used the same method to value the SDIRA on the date of decree, which was used to calculate the SDIRA's marital value. Despite considering other valuation evidence, the court found that the valuation reported by husband to Forge Trust was the appropriate valuation. *See Krejci*, ¶ 23 ("The court may select the valuation of one party over that of the other party . . . , and its decision will be upheld on appeal unless clearly erroneous.").

---

[1] Wife didn't object to the adjustment.

¶ 19    The court determined it was reasonable and equitable to value the SDIRA in the aggregate because this was the same method used to value other IRAs. *See In re Marriage of Powell*, 220 P.3d 952, 957-58 (Colo. App. 2009) (holding the court didn't abuse its discretion in treating an IRA as one asset for purposes of determining an increased value rather than determining the value based on the increase of the individual securities). Also, wife testified that she didn't want any portion of husband's SDIRA allocated to her. Because the court didn't order an in-kind division of the SDIRA's assets between the parties, there was no need to individually value the SDIRA's contents. Moreover, neither party presented compelling evidence that the SDIRA's assets should've been valued individually. *See Krejci*, ¶ 23 ("The parties must present the court with sufficient data to make a reasonable valuation; any failure to do so does not provide grounds for reversal.").

¶ 20    In sum, the court had discretion to value the SDIRA's assets in the aggregate to determine the SDIRA's marital value, and its valuation is supported by the Forge Trust documents. *In re Marriage of Salby*, 126 P.3d 291, 295 (Colo. App. 2005) ("The

determination of credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court.").  Because the court's valuation is reasonable in light of the evidence as a whole, we will not disturb it.

¶ 21    Having determined that the court acted within its discretion, we need not consider wife's argument that the SDIRA's erroneous valuation resulted in an inequitable division of the marital estate.  Likewise, because we discern no error with the court's aggregate valuation method, we need not address wife's argument that the court should've used the county's 2024 individually assessed values of the Hearthside properties — instead of the county's 2023 assessed values — when valuing the SDIRA's marital value.

B.    Addition of $100,000 to the SDIRA Valuation

¶ 22    Husband contends that the court erred by adding $100,000 to the value of the SDIRA to account for his cash withdrawals.  We disagree.

1.    Applicable Law and Standard of Review

¶ 23    The parties in a dissolution proceeding are temporarily enjoined from "transferring, encumbering, concealing, or in any way

10

disposing of" marital property without an order from the court or the consent of the other party, "except in the usual course of business or for the necessities of life." § 14-10-107(4)(b)(I)(A), C.R.S. 2025. When a party has dissipated marital property, the court can value the property as of the date that it last existed rather than on the date of the dissolution hearing. *In re Marriage of Lockwood*, 971 P.2d 264, 266 (Colo. App. 1998). Dissipation occurs "when one spouse depletes the marital estate for an improper or illegitimate purpose in contemplation of the dissolution." *In re Marriage of Smith*, 2024 COA 95, ¶ 75. "Whether a spouse dissipated marital property is a question of fact," and we won't disturb the district court's findings unless there is no support in the record. *Id.* at ¶ 76.

### 2. Analysis

¶ 24 Wife's petition for dissolution, prepared using a Judicial Department form, included automatic court orders that the parties were required to follow until the case was finalized. Those orders included the statutory temporary injunction language. *See* § 14-10-107(4)(b)(I)(A).

¶ 25    Husband argues that the court abused its discretion by valuing the SDIRA account prior to his $100,000 distribution because it didn't find that he violated the temporary injunction. But because husband's withdrawal could have affected wife's equitable interest in the marital portion of the SDIRA, the court concluded that the automatic temporary injunction applied, and it had to consider the depletion in the context of its equitable division.

¶ 26    Husband claimed that he withdrew the funds in the ordinary course of business, but wife testified — and the Forge Trust documents from 2018 through 2024 confirmed — that husband didn't take any distributions from the SDIRA during their marriage. *See Martinez v. Gutierrez-Martinez*, 77 P.3d 827, 830 (Colo. App. 2003) (holding that when there is a reasonable showing for the trial court to conclude a party dissipated marital funds, the party must establish that they were used in the usual course of business or for necessities).  Having noted that husband hadn't withdrawn any funds from the SDIRA during the six years he was married to wife, the court valued the SDIRA as it stood before husband withdrew $100,000.

¶ 27     Husband now argues that he used the funds for credit card debt, legal fees, and medical needs. But he didn't develop this argument in the trial court, arguing instead that he used the funds to improve another home that he had purchased in Florida while the dissolution was pending. Because husband's argument is undeveloped and raised for the first time on appeal, we won't address it. *See Minshall v. Johnston*, 2018 COA 44, ¶ 21 (This court "do[esn't] address arguments made for the first time on appeal.").

¶ 28     Husband also argues that the court abused its discretion by including the $100,000 he withdrew from the SDIRA but not considering that wife had dissipated $103,000 from an investment account containing marital funds. Husband's argument is misplaced.

¶ 29     In his response to wife's motion for relief under C.R.C.P. 59 and 60, husband only indicated that "wife ma[de] no proposal for how her divorce period spending should be addressed by the [c]ourt" and requested that "[w]ife's proposal of solely penalizing [h]usband for divorce spending should be denied." Unlike wife, who filed a detailed motion asking the trial court to consider the effect of husband's $100,000 withdrawal on the SDIRA, husband didn't ask

13

the trial court to consider wife's spending as a dissipation of the marital estate for an improper or illegitimate purpose in contemplation of the dissolution. Rather, he just asked the court not to penalize him for his withdrawals. Because husband's dissipation argument is conclusory and underdeveloped, we decline to address it. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address underdeveloped argument).

¶ 30    Likewise, husband raises a new issue on appeal that we decline to consider — that the court violated his right to "like treatment" of "similarly situated" individuals when it considered his withdrawals, but not wife's. As we have noted, if an argument is raised for the first time on appeal, we won't consider it. *See Minshall*, ¶ 21 (declining to address argument not raised in the district court).

¶ 31    We conclude that the court didn't abuse its discretion by including husband's $100,000 distribution in the value of the SDIRA.

## C.    The Hermosa Property

¶ 32    Husband argues that the trial court erroneously determined that the Hermosa property was marital property.  We disagree.

### 1.    Applicable Law and Standard of Review

¶ 33    Section 14-10-113, which governs the disposition of property, requires a multi-step analysis.  *LaFleur v. Pyfer*, 2021 CO 3, ¶ 63; *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001).  The district court must first determine whether an interest constitutes property, and if so, the court must classify such property as marital or separate.  *LaFleur*, ¶ 63.  Finally, it must value and make an equitable distribution of the marital property after considering the statutory factors of section 14-10-113.  *Id.*; *Balanson*, 25 P.3d at 35.

¶ 34    Apart from a few statutory exceptions, all property acquired during a marriage is generally presumed to be marital property. § 14-10-113(3); *see Balanson*, 25 P.3d at 36.  And "[t]he burden to rebut the statutory presumption that all property acquired during the marriage constitutes marital property rests on the party seeking to have the property declared separate."  *Medeiros*, ¶ 52.

¶ 35    When a spouse claims that property existing at the time of dissolution is separate because it was owned prior to the marriage, that spouse "has the burden of proof to trace the property back to the original premarital asset." *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 10. Thus, if assets received during marriage are traceable to specific premarital property, the assets may remain separate property. *Id.* But if it isn't possible to trace a spouse's premarital property because it has been commingled with marital property, the premarital property doesn't retain its separate character. *In re Marriage of Green*, 169 P.3d 202, 204 (Colo. App. 2007).

¶ 36    "The classification of property as a marital asset or a separate asset is an issue of law that is based on the court's findings of fact." *In re Marriage of Corak*, 2014 COA 147, ¶ 9. We review de novo the legal standard applied by the district court but defer to the court's factual findings. *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 17. "We may not reweigh the evidence to reach a different conclusion." *Green*, 169 P.3d at 204 ("[A]n appellate court cannot substitute itself as a finder of fact; thus, factual findings of the trial court are not to be disturbed on appeal unless clearly erroneous and not

16

supported by the record." (citing *Gebhardt v. Gebhardt*, 595 P.2d 1048, 1050 (Colo. 1979))).

### 2.    The Hermosa Property is Marital Property

¶ 37    Husband claims that the court erred by "sua sponte deeming the Hermosa property to be a gift to the marriage" even though he purchased the property using his own premarital funds and held the property solely in his name.  We discern no error with the trial court's finding that the Hermosa property was marital property.

¶ 38    Wife testified that the Hermosa property was a gift,[2] but husband testified that he never intended to make such a gift and that the Hermosa property was his separate property.  According to husband, because the Hermosa property was acquired in exchange for property acquired prior to the marriage under section 14-10-113(2)(b), the marital property presumption doesn't apply.  Husband argues that the Hermosa property was his separate property because (1) he can trace the premarital funds that he used to purchase it to the sale of his premarital home; (2) he acquired the

---

[2] The court presumed that wife meant that the Hermosa property was a gift to the marital estate and that it wasn't an individual gift to her.

property in his sole name; and (3) wife made several judicial admissions that the Hermosa property was his. We aren't persuaded.

¶ 39    We agree with the trial court that the evidence husband offered to support these assertions didn't overcome the presumption that the Hermosa property was marital property. First, although husband used funds from the sale of his premarital home in Austin to purchase the Hermosa property's lot, he deposited the money from the home sale into an account containing commingled funds, and he used that account to purchase the lot and to cover construction costs. The fact that husband used funds from the sale of his premarital home to purchase the lot isn't by itself indicative that the purchased property was separate. And husband's argument is belied because he used commingled funds to improve and construct the Hermosa property. *See, e.g.*, *Green*, 169 P.3d at 204 (Because "significantly all of the assets of the parties" were commingled early in the marriage, husband's contention that his social security income was separate property wasn't supported by the documentation he provided).

¶ 40    Because the funds used to construct the property were commingled, husband's argument that he can trace back at least $560,687 is unpersuasive.  The trial court admitted several exhibits detailing the parties' respective financial contributions to improve the Hermosa property.  But it found flaws with husband's calculations regarding the amount he claimed to have contributed as separate property.  And it determined that he hadn't established that any separate funds retained their separate character or that he intended for the funds to be separate.  Moreover, on appeal, husband offers conclusory statements that the trial court erred but doesn't explain why or sufficiently develop his argument for our review.  *See Antolovich*, 183 P.3d at 600 (party who doesn't refer to evidence or authority in support of argument doesn't present a cogent argument to review (citing *Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo. App. 2006))).

¶ 41    Second, husband's argument that he held sole title to the Hermosa property, and that, therefore, the property isn't marital, is unavailing.  Section 14-10-113(3) expressly provides that "property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property,

19

regardless of whether title is held individually." Thus, holding title to the Hermosa property, without more, doesn't extinguish the possibility that the property was a gift to the marriage, especially when husband didn't proffer sufficient evidence rebutting that presumption. *Cf. In re Marriage of Bartolo*, 971 P.2d 699, 700-01 (Colo. App. 1998) (holding that property that had been titled in joint tenancy and was then transferred to wife by quitclaim deed was wife's separate property).

¶ 42   Third, wife contributed at least $95,000 toward the construction of the Hermosa property. Husband admitted that wife contributed two checks — one for $70,000 and another for $25,000 — toward constructing and furnishing the house. Moreover, wife participated in nearly every aspect of the home's design and construction. She drew the initial floor plans, retained architects to finalize and submit plans, selected and purchased interior finishes and fixtures, and testified that she and husband jointly designed the residence.

¶ 43   Finally, the parties testified that the Hermosa property was intended to be their permanent marital residence. Husband stated that he planned to relocate the parties from Austin to Durango and

to build a home in an environment that wife chose. This suggests that, from the onset of their marriage, husband viewed and treated the Hermosa property not as a separate asset but as a marital asset. And wife consistently testified that she regarded the residence as "our home" and that the parties intended to remain there permanently.

¶ 44 Given this record, we can't say that the trial court erred by concluding that husband failed to establish that the Hermosa property was his separate property.

### 3. The Court Equitably Divided the Hermosa Property

¶ 45 After determining that property is marital, a district court must equitably divide it. § 14-10-113(1); *In re Marriage of Thornhill*, 232 P.3d 782, 787 (Colo. 2010). To make an equitable division, the court must value the marital property as of the date of the dissolution decree. § 14-10-113(5); *Balanson*, 25 P.3d at 36.

¶ 46 When dividing marital property, the court must consider all relevant factors, including (1) each spouse's contribution to the acquisition of the marital property; (2) the value of the property set apart to each spouse; (3) the economic circumstances of each spouse; and (4) any increases or decreases in the value of separate

21

property during the marriage or the depletion of separate property for marital purposes. § 14-10-113(1)(a)-(d); *see also Cardona*, ¶ 11 (listing the same factors).

¶ 47 The district court has great latitude to equitably divide marital property based on the facts and circumstances of the case, and we won't disturb its decision absent a clear abuse of discretion. *Balanson*, 25 P.3d at 35. However, a district court must make sufficient findings of fact and conclusions of law to give an appellate court a clear understanding of the basis of its order. *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008).

¶ 48 We discern no reason to disturb the trial court's distribution of the future sales proceeds of the Hermosa property. The record reflects that the court carefully considered the statutory factors for equitable distribution and explained its reason for the allocation. It recognized that a substantial portion of the residence was constructed with marital funds, and although each party separately contributed to the property, the individual contributions weren't dispositive of the ultimate distribution.

¶ 49 The court evaluated the parties' respective economic circumstances and separate property interests. Based on wife's

income, which consisted primarily of social security benefits, the court found that it was unlikely that she could cover the property's substantial mortgage obligation if awarded the property. Conversely, the court found that if it awarded the Hermosa property to husband, he would receive about two-thirds of the marital estate because he was also awarded the marital portion of the SDIRA. In order to equalize the two-thirds distribution, husband would need to borrow against the home's equity or liquidate some of the SDIRA's assets, which would carry significant tax liabilities.

¶ 50 Finally, the court analyzed the separate property value of the SDIRA, including any increase or decrease in its value, when it ordered the parties to sell the Hermosa property and equitably allocated a percentage of the future sales proceeds to the parties. Thus, to the extent that husband argues that his use of separate property to acquire and improve the Hermosa property entitles him to a greater share of its sale, we disagree.

¶ 51 In sum, the trial court acted within its discretion, and its allocation of the Hermosa property's future sales proceeds was neither arbitrary nor inequitable.

## III.   Disposition

¶ 52    We affirm the judgment.

JUDGE PAWAR and JUDGE SULLIVAN concur.